CONSERVATION DISTRICTS — APPROPRIATIONS The State of Oklahoma may appropriate monies for a public purpose to the Oklahoma Conservation Commission which distributes to the conservation districts funds appropriated for expenditure in connection with the activities of the conservation districts. House Bill No. 1442 of the First Regular Session of the Thirty-fifth Oklahoma Legislature does not permit a home owners association to levy taxes within a conservation district organized under the provisions of the Conservation District Act. House Bill No. 1442 of the First Regular Session of the Thirty-fifth Oklahoma Legislature, codified in the Oklahoma Statutes as Sections 851 through 855 of Title 60, is the only provision of the Oklahoma Statutes applicable to property owners association. The assessment of special taxes are governed by the statutes creating such taxes, which set out the requirement necessary to pass the specific tax created thereby. Subject to the limitations on the use of public funds, the Conservation District Act allows the use of county or state equipment by county or state employees on private property, where the necessary right thereto has been acquired, to carry into effect the purposes of said act. The Attorney General has considered your request for an opinion wherein you ask, in part, the following questions: "1. May the State of Oklahoma appropriate monies to a legally constituted conservation district? (I.E., Interlocal Cooperation Act — 74 O.S. 1001 [74-1001] — 74 O.S. 1008 [74-1008] (1971) passed 1965 — or other pertinent statutes)? "2. Would HB 1442 . . . permit a home owners association to levy taxes within said conservation district to maintain said drainage ditch? "3. What other statutes would apply to maintenance by property owners associations via special taxes for area problems? What majority of owners voting in a special election is required to pass a special proJect tax. "4. May county or state equipment be used by the conservation district employees on private property or by county or state employees provided temporary easement rights have been secured? What is the minimum-maximum time required for easement rights?" Conservation districts are organized under the provisions of the "Conservation District Act" (82 O.S. 1501-101 [82-1501-101] et seq.), which states at Section 1501-501 that: "A district perpetrated by the provisions of this act shall constitute a governmental subdivision of this state, and a public body corporate and politic, exercising public powers." Numbered paragraph 8 of Section 82 O.S. 1501-205 [82-1501-205] sets out the powers and duties of the Conservation Commission, and states in part that the Commission has the duty: "8. To recommend the inclusion in annual and longer term budgets and appropriation legislation of the State of Oklahoma of funds necessary for appropriation by the Legislature to finance the activities of the commission and the conservation districts; to administer the provisions of any act hereafter enacted by the Legislature appropriating funds for expenditure in connection with the activities of conservation districts; to distribute to conservation districts funds, equipment, supplies and services received by the commission for that purpose from any source, subject to such conditions as shall be made applicable thereto in any state or federal statute or local ordinance making available such funds, property or services; . . ." The Conservation Commission has the expressed duty to administer the provisions of acts of the Legislature appropriating funds for expenditure in connection with the activities of the conservation districts, and to distribute to the conservation districts such funds received for that purpose. The intent of the act is that the Legislature appropriate funds to the Conservation Commission, which serves as an agency of the state (82 O.S. 1501-201 [82-1501-201] (1971)), and which distributes such funds to the conservation districts, which are governmental subdivisions of the state (82 O.S. 1501-501 [82-1501-501] (1971)). Such funds are distributed to the several conservation districts to finance their respective activities subject to such conditions made applicable thereto in the appropriation legislation. Therefore the answer to the first part of your first question is that the State of Oklahoma may appropriate monies to the Oklahoma Conservation Commission which has the duty to distribute to conservation districts funds appropriated for expenditure in connection with the activities of the conservation districts. In response to the second part of your first question, a conservation district and the Interlocal Cooperation Act are not one and the same. The purpose of the Interlocal Cooperation Act (74 O.S. 1001 [74-1001] through 74 O.S. 1008 [74-1008])is to authorize cooperation and joint exercise of powers, privileges, or authority among the various governmental entities. Rollow v. West, Okl.,479 P.2d 962 (1971). Section 1007 of the act allows any public agency entering into an agreement pursuant to the act to appropriate funds to the entity created to operate the joint or cooperative undertaking. There is no direct relationship between a conservation district organized under the provisions of the Conservation District Act, and the Interlocal Cooperation Act. The former specifically creates a governmental entity while the latter authorizes cooperation or joint exercise of powers between governmental entities. House Bill No. 1442 of the First Regular Session of the Thirty-fifth Oklahoma Legislature, codified in the Oklahoma Statutes as Sections 851 through 855 of Title 60, is entitled in part: "An act relating to property; . . . providing for powers of owner's association; providing for assessment of taxes on property; . . .", and purports to give such owners association the power to impose "taxes, special assessments, and other charges" against the owners of real property in the real estate development wherein such association is formed. In Application of Erick Hospital District, Okl., 444 P.2d 216, 218 (1968), the Court stated: . "Because of the prohibition contained in Article X, Section 9 of the Constitution of the State of Oklahoma, before and after the amendment thereto in 1965, taxes on an ad valorem basis can be levied only for the purposes of the subdivision of the state which are listed therein — counties, cities, towns, and school districts, under the 1965 amendment of that section -. . ." The Court distinguished assessments from general taxes, stating that the former are authorized by of Article X, Section 7 of the Oklahoma Constitution, which provides that: "The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefitted thereby . . . without regard to a cash valuation." Since an "owner's association", such as provided for in the aforesaid act, clearly is not a county, city, town, municipal corporation, or school district, within the contemplation of Sections 7 and 9 of Article X of the Oklahoma Constitution, the levying of any taxes or special assessments by such an association is prohibited by those Sections of the Constitution. Because an owners association organized under the provisions of House Bill No. 1442 cannot lawfully levy taxes or special assessments, as hereinbefore set out, the remainder of your question regarding such associations levying taxes within a conservation district to maintain a drainage ditch is moot. Therefore your second question is answered in the negative. House Bill No. 1442, codified in the Oklahoma Statutes as Sections 851 through 855 (60 O.S. 851 [60-851]), inclusive, of Title 60, does not constitutionally permit an owners association to levy taxes to maintain a drainage ditch within either the real estate development or within any conservation district wherein such real estate development might be situated. The aforesaid House Bill No. 1442 is the only provision of the Oklahoma Statutes regarding home owners associations, and their powers and authority as such entity. There are various statutory-provisions applicable to the combating of specific problems of the citizenry of the state. The applicable statutes will necessarily depend upon the type of problem sought to be remedied. Your second question mentions a drainage ditch. Statutes applicable to drainage ditches and related matters are the Conservancy Act of Oklahoma (82 O.S. 1971 Ch. 5, 531 et seq.), and the Conservation District Act, supra. The answer to the second part of your third question depends upon the provisions of the statute authorizing the levy of a certain tax. Taxes are positive acts of the government created by statute, and therefore, must be enforced as provided by statute. United States v. Home Federal Savings Loan Association of Tulsa, Okl., 418 P.2d 319, 326
(1966). Therefore, the number or proportion of voters necessary to pass a special tax would be determined by the specific statute authorizing the levying of that certain tax. The foregoing answer to your second question obviates answering this question as it applies to House Bill No. 1442. Numbered paragraphs 2 and 3 of Section 1501-503 of the Conservation District Act provide as follows: "2. Any agency of the government of this state and any local political subdivision of this state is hereby authorized to make such arrangements with any district, through contract, regulation or other appropriate means, wherever it believes that such arrangements will promote administrative efficiency or economy. "3. In connection with any such arrangements, any state or local agency or political subdivision of this state is authorized, within the limits of funds available to it, to contribute funds, equipment, property or services to any districts; and to collaborate with a district in jointly planning, constructing, financing or operating any work or activity provided for, in such arrangements and in jointly acquiring, maintaining and operating equipment or facilities in connection therewith." Section 1501-504 of the Conservation District Act states, in part, as follows: "A conservation district shall be authorized to obtain a loan or grant of any funds, property, equipment or services which any state or federal agency or local governmental unit may be authorized to lend or grant for any of the purposes of this act; and may enter into such contract, loan agreement or other administrative arrangement as may be lawfully required in connection with any such loan or grant; . . ." Section 82 O.S. 1501-502 [82-1501-502] of the Conservation District Act sets out the powers of the conservation districts and the directors, stating in part as follows: "5. To obtain options upon and to acquire by purchase, exchange, lease, gift, grant, bequest, devise or otherwise, any property, real or personal, or other rights or interests therein, . . . provided that in all cases where lands or interests therein are deemed by the directors to be necessary to carry out the purposes of this act and which cannot otherwise be acquired, the district shall be vested with the power of eminent domain and may condemn and acquire such lands as provided by the laws . . ." A county is a political subdivision of this state. Herndon v. Anderson, 165 Okl. 104, 25 P.2d 326
(1933); Smith v. State, Okl. Cr., 381 P.2d 900, 903
(1963). Therefore, as set out in the aforementioned sections of the Conservation District Act, any agency of the state and a county may, within the limit of funds available, make arrangements with a conservation district to contribute equipment and services to the district for operating and maintaining programs for resource conservation authorized under said act. On the basis of the foregoing, it would follow that the answer to the first part of your fourth question would be affirmative. After acquiring whatever interests in the private property necessary to carry out the purpose and provisions of the Conservation District Act, subject to the constitutional limitations on the use of public funds, county or state equipment may be used by county or state employees upon such property for such purposes. There are not sufficient facts presented to answer the second part of your fourth question regarding the minimum-maximum time required for easement rights. Therefore, it is the opinion of the Attorney General that your questions be answered as follows: 1. The State of Oklahoma may appropriate monies for a public purpose to the Oklahoma Conservation Commission which distributes to the conservation districts funds appropriated for expenditure in connection with the activities of the conservation districts. 2. House Bill No. 1442 of the First Regular Session of the Thirty-fifth Oklahoma Legislature does not permit a home owners association to levy taxes within a conservation district organized under the provisions of the Conservation District Act. 3. House Bill No. 1442 of the First Regular Session of the Thirty-fifth Oklahoma Legislature, codified in the Oklahoma Statutes as Sections 851 through 855 of Title 60, is the only provision of the Oklahoma Statutes applicable to property owners association. The assessment of special taxes are governed by the statutes creating such taxes, which set out the requirement necessary to pass the specific tax created thereby. 4. Subject to the limitations on the use of public funds, the Conservation District Act allows the use of county or state equipment by county or state employees on private property, where the necessary right thereto has been acquired, to carry into effect the purposes of said act. (Harold McMillan)