The Honorable Steve Harrelson State Representative 1206 North State Line Avenue Texarkana, AR 71854-4969
Dear Representative Harrelson:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 Was the Miller County Quorum Court justified in using for other purposes the interest on tax revenues dedicated to the construction of a county jail?
The ballot title approving the sales and use tax at issue is unambiguous in declaring that the 1/4% tax will be devoted only to "acquiring, constructing, and equipping jail facilities for the county." Miller County Ordinance No. 2000-08 is likewise unambiguous in declaring that the 1/4% tax will be devoted to "acquiring, constructing and equipping jail facilities for the county." Neither the ballot title nor the referenced ordinance purported to authorize the diversion from these stated purposes of interest earned on tax revenues.
My inquiries reveal that the Division of Legislative Audit of the Legislative Joint Auditing Committee, in an independent audit issued on February 7, 2005 covering fiscal year 2003, offered the following critique of Miller County's practice of diverting the interest income from this tax:
 The County Judge approved the transfer of $381,059 from the Jail Construction Fund to the General Fund. The transfer consisted of interest and investment income earned on the proceeds of $8,650,000 Miller County, Arkansas Capital Improvement Sales and Use Tax Bonds (County Jail Project), Series 2000. The bond indenture agreement did not address the proper disposition of these funds and therefore, we recommend the money be paid back to the Jail Construction Fund and the County seek an Attorney General's Opinion to determine its proper disposition.
RESPONSE
In my opinion, given that no legislation authorizes separating interest from principal under the circumstances described in your request, the answer to your question is "no."
In addressing the identical question of whether interest proceeds from a sales or use tax might be used for purposes other than those recited on the ballot approving the tax, one of my predecessors observed:
 This would be contrary to the fundamental constitutional precept that monies arising from a tax levied for one purpose cannot be diverted to another. See Ark. Const. art. 16, § 11. See also generally Page v. Alexander, 206 Ark. 479, 177 S.W.2d 415
(1943). As stated in Page:
 The law is, of course, that a levy made for the purpose of raising funds for an expressed purpose may not be used in raising money for a different purpose. [Citation omitted]. . . . By the use of the phrase "arising from a tax levied for one purpose" it was evidently intended that, when the tax was collected, it automatically belonged to the purpose for which it was levied, and could not thereafter be diverted by the Legislature to another purpose.
 206 Ark. at 483-484 (emphasis original).
Ark. Op. Att'y Gen. No. 1997-173. In Ark. Op. Att'y Gen. No.1994-388, a copy of which you attached to your request, my predecessor further offered the following analysis:
 This office has . . . opined, based on decisions by the Arkansas Supreme Court, that unless there is a statutory provision lawfully separating the interest from the revenue principal, the interest on public funds becomes an accretion thereto and may only be used for the purpose for which the principal may be used. See Op. Att'y Gen. 91-005. . . . Although, as noted in the aforementioned opinion, a question remains as to whether the interest on special taxes may be lawfully separated from the principal,[1] it is not necessary to reach this issue as our research has revealed no statutes purporting to do so. We therefore conclude that the interest from the Pike County sales tax revenues cannot be lawfully diverted from the intended funding of solid waste disposal for county general purposes.
This passage accurately paraphrases the court's holding inHartwick v. Thorne, 300 Ark. 502, 780 S.W.2d 531 (1989), which held, inter alia, that, at least so long as the legislature has not dictated otherwise, interest on taxes dedicated to a particular purpose must be treated as part of the taxes in determining how the interest might be used. The court summarized as follows its previous rulings on this issue:
 This court was called upon to make a decision concerning Article 16, Section 11 of the Arkansas Constitution in the case of Mears v. Little Rock School Dist., 268 Ark. 30, 593 S.W.2d 42 (1980), where we held that the interest on tax monies raised on behalf of the school district belonged to the schools and not to the county. We cited with approval Pomona City School Dist. v. Payne, 9 Cal.App.2d 510, 50 P.2d 822 (1935), which held that interest on school taxes was part of the principal and belonged to the schools in the absence of legislative action. The Mears opinion noted that Miles v. Gordon, 234 Ark. 525, 353 S.W.2d 157 (1962), had relied on the California case in reaching a decision that "Article 16, Section 12 of the Constitution, which prohibits taking money out of the state treasury without an appropriation, did not apply to interest on tax money when the two were separated by legislation." The Miles case involved an act of the legislature in using interest accrued on investments, a part of the revenue stabilization reserve fund, after it had been collected for another purpose. Miles went on to hold that interest on funds, unless lawfully separated therefrom, was a part of the principal. However, the interest collected in Miles was on funds which had been deposited into the general revenues of the state treasury.
Id. at 508.
The passage just quoted bears analysis. At issue in Mears was whether a quorum court could divert to the county general fund interest on tax revenues held by the county collector and dedicated to the school districts. 268 Ark. at 31. The court expressly declined to opine on whether doing so would pass constitutional muster, instead concluding that the quorum court could not do so because it was expressly precluded by statute from enacting any legislation "affecting the public school system."[2] Id. at 33. Mears is consequently unhelpful in the present case, since the Arkansas Code contains no legislation either permitting or foreclosing the diversion of interest on tax revenues dedicated to constructing a county jail.
The courts decision in Miles may be more instructive. Notwithstanding the fact that this case involved a challenge under Ark. Const. art. 16, § 12, as opposed to Ark. Const. art. 16, § 11, the following analysis from Miles would appear to bear on your question:
 The case of Pomona City School District v. Payne, 9 Cal. 510, 501 P.2d 822, wherein it was held that the County of Los Angeles could not keep the interest obtained through the investment of school district funds on deposit in the county treasury, is cited. The Court there stated that interest is an accretion or increment to the principal fund earning it, and becomes a part thereof. In that very case, however, the California Court limited this generally recognized concept of law by stating that interest is an accretion to the principal fund earning it, and becomes a part thereof "unless lawfully separated therefrom." The Court said, "In fact, the rule of law would control that the right of depositors to their interest increments could not be taken away without direct statutory authority to that effect." We concur with that statement of the law. Here, we think it immaterial how the interest may be designated, be it "cash funds", or by some other name. The pertinent questions are whether the General Assembly had the authority to determine whether certain funds shall be paid into the State Treasury, whether the Legislature likewise had the authority to lawfully separate the interest in question from the invested tax funds that produced it, and whether the interest must be classified as "taxes."
 It is apparent from a study of the decision rendered in Gipson v. Ingram, supra [215 Ark. 812, 223 S.W.2d 595 (1949)], that the Court's conclusions were based on the holding that the Legislature had the authority to determine whether certain designated funds should be paid into the State Treasury. We are likewise of the opinion that the Legislature is not prohibited by our Constitution from separating the interest from the principal and pledging it, as in Act 65. For that matter, taxes and interest are not the same. Taxes are enforced contributions exacted pursuant to statutory authority, while interest is the price paid by a borrower for the use of what he borrows, generally a percentage on the principal amount. We hold that interest, when separated from the principal by legislative enactment, is not "taxes", as the term is ordinarily used, and there is no requirement that this interest be deposited in the State Treasury; this being true, there is no necessity for the biennial appropriation.
234 Ark. at 528-29 (emphasis added; footnotes omitted).
In my opinion, both Miles and Hartwick clearly establish that interest may be diverted from principal and used for a purpose other than that expressed on the ballot and in the levying ordinance only if the General Assembly has expressly authorized doing so. The General Assembly has enacted no such authorizing legislation in the present case. Accordingly, I believe the Division of Legislative Audit was correct in recommending that the interest income be returned to the Jail Construction Fund.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] Section 14-72-701 of the Code (Repl. 1998) contains precisely such a provision with respect to certain bonds issued under Ark. Const. amend. 13:
 In instances where bonds were issued by a municipality under Arkansas Constitution, Amendment 13 [repealed], and the project for which the bonds were issued has not been commenced within ten (10) years after the bonds were issued, all interest accrued and accruing on the bond principal may be transferred into the general fund of the city upon a two-thirds (2/3) vote of its governing body. The principal balance shall be refundable to the taxpayers under the procedure prescribed by this subchapter.
[2] This proscription is currently codified at A.C.A. §14-14-805(3) (Repl. 1998).